# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO H.,[1]<br>    Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | NO. SACV 17-2048-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Marco H. ("Plaintiff") filed a Complaint on November 22, 2017, seeking review of the denial of his application for a period of disability and disability insurance ("DI"). On January 17, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9-11.) On September 6, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 17.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 30.) The Commissioner requests that the

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 31.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 28, 2010, Plaintiff, who was born on December 14, 1959, filed an application for a period of disability and DI.[2] (*See* Administrative Record ("AR") 236.) Plaintiff alleged disability commencing April 24, 2009 due to: nerve damage; depression; high blood pressure; and cholesterol. (AR 276.) Plaintiff previously worked as a mechanical equipment engineering assistant or mechanical design technician (DOT 007.161-018). (AR 277, 1101.) The Commissioner denied Plaintiff's application initially (AR 85-87), and on reconsideration (AR 88), and following a hearing (AR 92-99). On September 26, 2013, the Appeals Council vacated the ALJ's hearing decision and remanded the case for further proceedings with a specific order to, *inter alia*, obtain updated evidence about Plaintiff's impairments, further evaluate Plaintiff's subjective complaints, and provide rationale with specific references to the record in support of assessed limitations. (AR 105-107.)

On May 15, 2014, Administrative Law Judge Sharilyn Hopson (the "ALJ") held a hearing on remand from the Appeals Council. (AR 41-65.) Plaintiff, who was represented by counsel, testified before the ALJ as did: vocational expert Alan Boroskin; medical expert Dr. Alan Ostrow; psychological expert Dr. Glenn Griffin; and Plaintiff's wife, Rosie Hernandez. (AR 41-83.) On August 4, 2014, the ALJ issued a partially favorable decision in which she denied Plaintiff's application from the alleged onset date of April 24, 2009 through June 13, 2014, but found Plaintiff disabled and entitled to benefits beginning June 14, 2014. (AR 20-33.) On July 8, 2015, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

---

[2] Plaintiff was 49 years old on the alleged onset date and was thus defined as a younger person under agency regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has since changed age categories twice and now meets the agency definition of a person of advanced age. *Id.* § 404.1563(e).

2

Plaintiff appealed to the United States District Court, which issued an Order and Judgment on March 14, 2016 reversing the Commissioner's decision and remanding the action for further proceedings. (AR 1156-1182.) On August 23, 2017, the ALJ conducted a hearing. (AR 1094-1108.) Plaintiff, who was represented by counsel, was present but did not testify. (*See generally id.*) Vocational expert Jeanine Metildi ("the VE") testified. (AR 1100-07.) On September 13, 2017, the ALJ issued an unfavorable decision, denying Plaintiff's application for DI for the period between Plaintiff's alleged onset date of April 24, 2009 and June 14, 2014. (AR 1067-85.) The ALJ's September 13, 2017 decision is the final decision of the Commissioner. (*See* Joint Stip. at 3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (AR 1072.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 24, 2009. (AR 1072.) The ALJ determined that Plaintiff had the following severe impairments: "idiopathic facial pain; partial tear of the right rotator cuff; impingement syndrome; cervical and lumbosacral discogenic disease; diabetes mellitus; atypical facial pain; and depressive disorder, not otherwise specified." (AR 1072.) In reaching this conclusion, the ALJ found that Plaintiff also has the medically determinable impairments of hypertension, chronic right ear infection, and hyperlipidemia but these impairments are non-severe. (AR 1072.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 1073.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform the following:

Occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 7-hour workday; sit for 6 hours in an 8-hour workday, with the use of a cane to ambulate outside the work area and the ability to stand and stretch every hour estimated to take 1 to 3 minutes per hour; no work about shoulder level bilaterally; occasionally bend, stoop, crouch, or climb stairs; never crawl, kneel, or climb ladders, ropes, or scaffolds; no work at unprotected heights or around moving and dangerous machinery; limited to tasks of a reasoning level of 3 or less; occasional interaction with coworkers and supervisors; no contact with the public; and no fast paced work such as rapid assembly line work.

(AR 1075.)

The ALJ found that Plaintiff was unable to perform his past relevant work as a mechanical equipment engineering assistant or mechanical design technician (DOT 007.161-018). (AR 1083.) However, the ALJ also found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of electronics worker (DOT 726.687-010), routing clerk (DOT 222.687-022), and bench assembler (DOT 706.684-022). (AR 1084.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through June 13, 2014. (AR 1085.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\
\\
\\

# DISCUSSION

The sole issue in dispute is whether the ALJ complied with this Court's March 14, 2016 Order and properly evaluated the treating opinion of Gungiganur Gurushanthea, M.D. (Joint Stip. at 5.)

## I. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Generally, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2) (governing claims filed before March 27, 2017), 404.1520c(c) (governing claims filed on or after March 27, 2017). Accordingly, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion *is* contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (emphasis added). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An ALJ errs when he discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**II.    Opinion of Dr. Gungiganur Gurushanthea**

Plaintiff, a veteran, experienced a service connected shoulder injury – an acromioclavicular joint separation – that was treated with surgery. (*See* AR 643.) On November 9, 2011, Dr. Gurushanthea completed a Physical RFC Questionnaire. (AR 501-07.) Dr. Gurushanthea stated that Plaintiff began receiving treatment with the VA in Long Beach in 2003 and began receiving treatment from Dr. Gurushanthea at that facility in 2007. (AR 501.) Dr. Gurushanthea stated in the 2011 opinion that he saw Plaintiff every one to three months. (AR 501.)

Dr. Gurushanthea stated that Plaintiff had been diagnosed with the following conditions: atypical otalgia; cervicalgia, degeneration of cervical intervertebral disk; disorders of tendon and bursae in shoulder region, unspecified; lumbago, degeneration of lumbar or lumbosacral disk; and depression. (A.R. 501.) Dr. Gurushanthea opined that plaintiff could: occasionally lift and carry 10 pounds and frequently less than 10 pounds; sit, stand, and walk for 8 hours in an 8-hour working day, with allowances for shifting positions at will; occasionally look down, turn head left or right, look up, hold head in a static position, stoop, crouch/squat, climb ladders and stairs; rarely twist; use the right hand to grasp, turn, and twist objects 35% of the day; use the left hand to grasp, turn, and twist objects 65% of the day; and never reach (including overhead) with the right arm. (*Id.* 31, 505-506.) Dr. Gurushanthea further opined that Plaintiff would be absent from work more than four days per month because

of his impairments or treatment, and Plaintiff was incapable of even "low stress" jobs. (A.R. 505, 507.)

Dr. Gurushanthea identified clinical findings and objective signs in support of his opinion. These included the results of a June 22, 2010 MRI of Plaintiff's cervical spine, which showed: at C5/C6, a "4mm posterior central disk osteophyte complex, facet and ligamentum flavum hypertrophy, with severe spinal canal stenosis with AP spinal canal patency of 7mm[,] . . . effacement of most of the CSF, the osteophyte complex touches the anterior cord[,] . . . severe bilateral neuroforaminal stenosis"; and, at C6/C7, a "3 mm posterior central disk osteophyte complex and facet arthritis. Moderate spinal canal stenosis with AP spinal canal patency of 8 mm. Moderate left neuroforaminal stenosis"; and "multilevel degenerative disk disease and facet arthritis." (AR 502.) Dr. Gurushanthea also referred to x-rays, which showed a straightening of the C/S curvature and mild narrowing of C5/C7 interspace. (AR 502.) Finally, Dr. Gurushanthea provided the results of physical examinations, which showed that Plaintiff had a decreased range of motion in his right shoulder and, *inter alia*, a palpable trigger point over Plaintiff's right cervical paraspinal. (AR 502.)

## III.   Background and ALJ's Decision

In her August 4, 2014 partially favorable decision, the ALJ accorded "little weight" to Dr. Gurushanthea's opinion because the opinion was "not consistent with the record as a whole, *e.g.*, unremarkable physical examinations (normal grip and motor strength) and minor MRI/x-ray findings." (AR 31.) To that end, the ALJ declined to adopt several of Dr. Gurushanthea's assessed limitations, including those limiting Plaintiff to: occasionally lifting no more than ten (as opposed to 20) pounds; frequently lifting less than ten (as opposed to up to and including ten) pounds; occasionally looking down, turning his head left or right, or looking up; rarely twisting; and using the right hand to grasp, turn, and twist objects for no

more than 35% of the day.  (*Compare* AR 24 (ALJ's August 4, 2014 assessment of Plaintiff's RFC) *with* AR 505-06 (Dr. Gurushanthea's opinion).)

The Court, in its March 14, 2016 Order, reversed the ALJ, finding that she had failed to articulate specific and legitimate reasons supported by substantial evidence in the record for according little weight to Dr. Gurushanthea's opinion.  The Court observed that the ALJ's characterizations of Plaintiff's physical examinations as revealing "normal" grip and motor strength and Plaintiff's MRI and x-ray findings as "minor" were not supported by substantial evidence.  (AR 1175.)  Accordingly, the Court instructed the Commissioner on remand to "either credit Dr. Gurushanthea's opinion or articulate specific and legitimate reasons for discounting it."  (AR 1175.)

The ALJ again chose not to credit Dr. Gurushanthea's opinion and, again, omitted from her September 18, 2017 RFC assessment the portions of Dr. Gurushanthea's opinion that she had omitted from her August 4, 2014 RFC assessment.  Accordingly, the ALJ discounted Dr. Gurushanthea's opinions that Plaintiff was limited to, *inter alia*: occasionally lifting no more than ten (as opposed to 20) pounds; frequently lifting less than ten (as opposed to up to and including ten) pounds; occasionally looking down, turning his head left or right, or looking up; rarely twisting; and using the right hand to grasp, turn, and twist objects for no more than 35% of the day.  (*Compare* AR 1075 (ALJ's September 18, 2017 assessment of Plaintiff's RFC) *with* AR 505-06 (Dr. Gurushanthea's opinion).)  The ALJ explained that she accorded "little weight" to Dr. Gurushanthea's opinion because "it is not consistent with the record as a whole, *e.g.*, generally unremarkable physical examination findings."  (AR 1081.)  To illustrate what she meant by "generally unremarkable physical examination findings," the ALJ stated the following:

> [Plaintiff] had good strength and full range of motion present.  There were no
> neurological deficits.  There was no tenderness to palpation or muscle spasm

noted. Straight leg raising was negative, bilaterally. There was normal muscle tone and bulk without atrophy. Motor strength was 5/5 throughout, without focal motor deficits. Gait and balance were within normal limits. Sensation was intact to light touch throughout the dermatomes. He had normal gait, strength, reflexes and sensation.

(AR 1081.) The ALJ cited for the support: Exhibit 11F/5, which is a seemingly irrelevant examination by an infectious disease specialist; Exhibit 4F, which is an October 23, 2010 examination by the consulting examining physician, who observed, *inter alia*, reduced grip strength in Plaintiff's right – dominant – hand; Exhibit 23F/10-11, which is an October 7, 2013 treatment note indicating that Plaintiff refused to move his right shoulder for fear of pain, had a reduced grip in his right hand and a reduced range of motion in his right elbow and right wrist, and had received abnormal results on an electrodiagnostic study indicating "acute chronic RIGHT C6-C7 motor radiculopathy," "right median sensory and motor neuropathy with slowing across the wrist" and "acute denervation of the right NPB"; and Exhibit 25F, a January 17, 2014 examination by the consulting examining physician, during which Plaintiff refused to move his right shoulder for fear of pain and exhibited bilateral paraspinal muscle tenderness in his lumbar area but no reduced grip strength or range of motion).) In sum, of the ALJ's four cites to the record, only one of them arguably supports her characterization of the medical record as reflecting "generally unremarkable physical examination findings," and, even that citation (the consulting examining internist's January 17, 2014 examination) discusses Plaintiff's refusal to move his right shoulder for fear of pain and his bilateral paraspinal muscle tenderness.

Despite the ALJ's failure to identify substantial evidence in the record to support her finding that Plaintiff had "generally unremarkable physical examination findings," Defendant contends that the ALJ's opinion is, in fact, supported by "an abundance of evidence." (Joint Stip. at 20 (citing AR 404 (5/13/2010 finding "5/5 strength in all extremities"), 477

10

(10/11/2010 examining psychiatrist observes normal gait), 484 (10/23/2010 examining internist observes normal gait and intact sensation), 498 (undated note reflecting degenerative changes to the cervical spine and right shoulder, decreased range of motion in the right shoulder, but hearing within normal limits), 502 (Dr. Gurushanthea states in 2011 opinion "No gait abnormality noted. Patient moves easily from sit to stand and with transfers to exam table."), 535 (5/21/2009 "no gait disturbances"), 558 (12/12/2008 treatment note predating alleged onset date), 593 (May 2012 note states "no abnormality noted to forward gait" but range of motion limited with extension and flexion at waist), 596 (5/4/2012 "ambulatory steady gait"), 607 (11/3/2011 report from Skull Base Institute diagnoses Plaintiff with otalgia and possibly nervus intermedius neuralgia), 612 (November 2011 brain MRI), 620 (Dr. Nance's November 2013 RFC questionnaire indicating that Plaintiff has slightly reduced strength in his right shoulder as well as pain on movement), 639 (undated 2013 note indicating "positive bowstring test but negative straight leg raise" and decreased sensation on the right "in L4 and S1"), 647 (9/4/2013 note indicating patient could walk without assistance, Plaintiff refused to move his right shoulder because of fear of pain, decreased grip strength in right hand), 653 (undated 2013 note indicating "positive bowstring test but negative straight leg raise" and decreased sensation on the right "in L4 and S1"), 699 (7/30/2012 physical exam showing no atrophy in extremities, negative straight leg raising, and normal results on manual motor testing of hips, knees, and ankles), 709-10 (8/23/2012 physical exam showing no gait abnormality, normal manual motor testing of hips, knees, and ankles, negative straight leg raising), 725 (11/5/2013 physical exam observing no atrophy of extremities and negative straight leg raising), 806 (10/7/2013 note observing Plaintiff walked without assistance, exhibited severe limitation in right shoulder range of motion, and Plaintiff refused some portions of the exam due to right shoulder pain), 817 (8/13/13 Plaintiff following up about the status of a massage consult and renewal of a DMV placard), 820 (9/4/2013 Plaintiff requests medication refill), 826 (9/4/2013 cervical range of motion and left shoulder range of motion within normal limits, Plaintiff refused to move right shoulder fearing of pain), 831 (10/7/2013 cervical range of motion and left shoulder range of motion within normal limits, severe

limitation of right shoulder range of motion), 842 (9/20/2013 Plaintiff following up about the status of a massage consult and renewal of a DMV placard), 845 (11/16/2013 Plaintiff requesting to pick up medications), 851 (9/4/2013 Plaintiff following up about the status of a massage consult and renewal of a DMV placard), 883 (4/1/2013 Plaintiff complains of abdominal pain), 888 (2/19/2013 gait intact, can walk on heels and toes, sensation intact, 896 (2/13/2013 diet and medication safety discussed), 936 (8/23/2012 Plaintiff walked without an assistive device and no gait abnormality noted, normal results on manual motor testing bilaterally, negative straight leg raising, hip range of motion within normal limits, cervical range of motion limited), 951 (7/30/2012 no atrophy or wasting in extremities, normal results on manual motor testing bilaterally), 981 (1/17/2014 consulting examining physician's findings that Plaintiff had reduced grip strength in his right hand), 1006 (8/6/2009 no relevant results), 1009 (7/2/2009 no relevant results), 1013 (6/10/2009 "overall findings were normal" for musculoskeletal system), 1016 (5/8/2009 no relevant results), 1018 (4/24/2009 examination predating alleged onset date), 1540 (3/22/2016 results postdating relevant period), 1758 (3/22/2016 results postdating relevant period), 1802 (1/26/2016 results postdating relevant period 1857 (11/2/2015 no relevant results of physical examination that postdates relevant period), 2114 (8/1/2016 results postdating relevant period), 2238 (2/16/2017 results postdating relevant period), 2296 (11/17/2016 results postdating relevant period), 2423 (4/11/2017 results postdating relevant period), 2427 (1/25/2017 no relevant results of physical examination for a date outside the relevant period), 2511 (4/5/2017 results postdating relevant period)).

The Commissioner also acknowledges that the ALJ failed to address the record evidence indicating that Plaintiff has a reduced grip strength in his right hand. (Joint Stip. at 21) (citing AR 634, 981). Nevertheless, the Commissioner contends that the ALJ's RFC "reasonably accounts" for Plaintiff's reduced grip strength by limiting Plaintiff to light work with no overhead reaching, no climbing, and no rapid assembly work (Joint Stip. at 21), thereby rendering any error with respect to the ALJ's assessment of Plaintiff's grip strength harmless.

1  IV.  **Discussion**

3     **A. The ALJ Failed to Explain How Dr. Gurushanthea's Opinions Are Inconsistent with the Record**

The ALJ's sole reason for discounting Dr. Gurushanthea's opinions regarding Plaintiff's functional limitations was her determination that these opinions are inconsistent with the record as a whole.  Inconsistency between a treating or examining physician's opinion and the record as a whole can be a specific and legitimate reason for discounting the opinion.  *See Gopher v. Commissioner of Soc. Sec.*, 281 F. Supp. 3d 1102, 1119 (E.D. Wash. 2017); *but see McGee v. Colvin*, No. CV 12-7539-CW, 2013 WL 4041849, at *5 (C.D. Cal. Aug. 7, 2013) (ALJ's assertion that treating physician's opinion was inconsistent with the record was legally insufficient because it was "vague and non-specific").  However, the ALJ must do more than offer conclusions about a physician's opinion, "[s]he must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  This the ALJ did not do.  Rather than addressing each of the limitations assessed by Dr. Gurushanthea and explaining how the record contradicted them, the ALJ stated that Dr. Gurushanthea's opinion was "not consistent with the record as a whole" and then listed a series of findings about Plaintiff's physical condition. (AR 1081.)  The ALJ did not explain how these findings were at odds with any portion of Dr. Gurushanthea's opinion and the inconsistencies are not readily apparent, particularly given that some of the findings the ALJ listed are findings that Dr. Gurushanthea himself also made and included in his opinion. (*Compare*, *e.g.*, AR 1081 (ALJ finds that Plaintiff exhibited negative straight leg raising and a normal gait) *with* AR 502 (Dr. Gurushanthea states that Plaintiff has no gait abnormality) *and* AR 504 (Dr. Gurushanthea states that Plaintiff's straight leg raising was negative).)

\\
\\
\\

### B. Some of the ALJ's Findings Concerning Dr. Gurushanthea's Opinions Are Not Supported by Substantial Evidence

Additionally, some of the ALJ's findings are not supported by substantial evidence in the record. Specifically, the ALJ mischaracterized the record when she found that Plaintiff exhibited a "full range of motion" and received motor strength testing results of "5/5 throughout." (*See* AR 1081.) The record shows that Plaintiff's motor strength and range of motion were variable "throughout" this period and, more troubling, during most of the examinations cited by the ALJ and the Commissioner, Plaintiff exhibited either a limited range of motion or decreased motor strength in one or more areas. (*E.g.*, AR 498 (undated note reflecting degenerative changes to the cervical spine and right shoulder, decreased range of motion in the right shoulder), 593 (May 2012 note observes limited range of motion with extension and flexion at waist), 699 (July 2012 physical exam showed abnormal results on manual motor testing of Plaintiff's hip flexion), 936 (August 2012 note indicated that Plaintiff exhibited a limited range of motion in his cervical spine), 647 (September 2013 note indicates that Plaintiff refused to move his right shoulder because of fear of pain), 826 (September 2013 note indicated that Plaintiff refused to move his right shoulder), 634 (October 7, 2013 treatment notes indicating that Plaintiff refused to move his right shoulder for fear of pain, had a reduced grip in his right hand and a reduced range of motion in his right elbow and right wrist, and had received abnormal results on an electrodiagnostic study indicating "acute chronic RIGHT C6-C7 motor radiculopathy," "right median sensory and motor neuropathy with slowing across the wrist" and "acute denervation of the right NPB"), 806 (October 2013 note observed that Plaintiff exhibited severe limitation in his right shoulder range of motion and refused some portions of the exam due to right shoulder pain), 831 (October 2013 note observed severe limitation of right shoulder range of motion), 620 (November 2013 opinion indicates that Plaintiff has reduced strength in his right shoulder and pain on movement).)

**C. The ALJ Effectively Ignored Dr. Gurushanthea's Opinion Concerning Plaintiff's Use of His Right Hand and the Error is Not Harmless**

Finally, and perhaps most egregiously, despite this Court discussing the evidence that Plaintiff has decreased grip strength in his right hand (*see* AR 1173), the ALJ effectively ignored the portion of Dr. Gurushanthea's opinion concerning Plaintiff's grip strength and capacity to use his right hand by offering no rationale or relevant medical finding that would support her decision to discount it (*see generally* AR 1075, 1081). *Cf. Garrison*, 759 F.3d at 1012-13 (ALJ errs when she discounts a treating or examining physician's medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). Specifically, Dr. Gurushanthea opined that Plaintiff could use his right hand, which is his dominant hand, to grasp, turn, and twist objects for no more than 35% of the day. (AR 506; *see also* AR 482 ("patient is right hand dominant").) The Commissioner concedes that the ALJ may have erred in failing to specifically address Plaintiff's reduced grip strength but contends that any error is harmless because the ALJ limited Plaintiff to lifting and carrying ten pounds frequently and 10 pounds occasionally, with further restrictions in the use of his arms, and included a limitation on rapid assembly work. (Joint Stip. at 19, 21.)

The Commissioner's harmless error argument is unavailing. Dr. Gurushanthea opined that Plaintiff was limited both in his ability to lift objects above a particular weight *and* in his ability to use his right hand to grasp, turn, and twist objects. He did not, as the Commissioner urges the Court to do, conflate them. Further, the Court cannot see how adopting a limitation on lifting, reaching, and arm use, as the ALJ did, would necessarily encompass a limitation on grasping, fine manipulation, and/or hand use. Indeed, when the ALJ posited the hypothetical limitation on rapid assembly work to the VE, she characterized the limitation as precluding "fast-paced work" – not, as the Commissioner argues, a limitation on hand use. (AR 1102.)

Thus, the ALJ ultimately found that Plaintiff could perform jobs requiring frequent hand use, such as the occupation of bench assembler (DOT 706.684-042), which, according to the Dictionary of Occupational Titles, involves using one's hands to assemble parts to form equipment, fitting parts of components together and fastening them with bolts and cotter pins, and using hand and power tools. *See also Suarez v. Astrue*, No. ED CV 11-1940-SP, 2012 WL 4848732, at *4 (C.D. Cal. Oct. 11, 2012) (reciting vocational expert's testimony that, if the plaintiff had been limited to only occasional use of her hands, she would not be able to perform the job of bench assembler). In light of the foregoing, the ALJ erred in her assessment of Dr. Gurushanthea's opinion regarding Plaintiff's limited capacity to use his right hand, and that error was not necessarily inconsequential to the ALJ's ultimate nondisability determination nor can the agency's path reasonably be discerned despite the error. *See Brown-Hunter*, 806 F.3d at 492.

V.     **Remand is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). A district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* n.26; *see also Balladarez v. Colvin*, No. CV 13-9490-MAN, 2014 WL 7185342, at *15 (C.D. Cal. Dec. 16, 2014) (declining to award for benefits because, *inter alia*, the VE did not receive an opportunity to hypothesize about whether a claimant of plaintiff's age, education,

and work experience who has a residual functional capacity based on a proper evaluation of the medical record could perform work that exists in significant numbers in the national economy). However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

The Court cannot say on the record before it that there is no question that the ALJ would be required to find Plaintiff disabled and award benefits on remand. Accordingly, the Court remands for further proceedings.

## VI. Instructions for the ALJ on Remand

Although the requirements for an award of benefits are not satisfied at this time, it is troubling that the ALJ has now twice failed to either adopt Dr. Gurushanthea's opinions regarding Plaintiff's functional limitations or articulate a specific and legitimate reason supported by substantial evidence in the record for discounting them. Accordingly, on remand:

1. The ALJ must consider *each* limitation assessed by Dr. Gurushanthea, including Dr. Gurushanthea's assessment that Plaintiff can use his right hand to grasp, turn, and twist objects for no more than 35% of the day;
2. The ALJ must either adopt or discount each limitation assessed by Dr. Gurushanthea. For any limitation assessed by Dr. Gurushanthea that the ALJ decides to discount, the ALJ must support her decision to discount the limitation with a specific and legitimate reason supported by substantial evidence in the record.

3. Regardless of which portions of Dr. Gurushanthea's opinion the ALJ decides to adopt, the ALJ shall pose a hypothetical to the VE that includes Dr. Gurushanthea's assessment that Plaintiff can use his right hand to grasp, turn, and twist objects for no more than 35% of the day.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order, including the instructions for the ALJ *supra*.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: February 15, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE